UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| THOMAS MERCK, individually and as a representative of the Class, | NO. 2:20-cv-02908 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| WALMART, INC., | |
| Defendant. | |

Thomas Merck, by and through his attorneys, on behalf of himself and the Class set forth below, brings the following Class Action Complaint against Walmart, Inc. ("Defendant" or "Walmart").

**PRELIMINARY STATEMENT**

1. This consumer class action is brought under the Fair Credit Reporting Act ("FCRA") against a company that routinely and systematically violates the FCRA's basic protections by failing to provide applicants and employees with a full copy of their consumer reports prior to taking adverse action against them, as required by 15 U.S.C. § 1681b(b)(3).

2. Because Walmart's practices have been routine and systematic, Plaintiff asserts claims for damages on behalf of himself and a Class of similarly situated individuals against whom Walmart took adverse action prior to providing them with a full and accurate copy of their consumer reports.

**THE PARTIES**

CLASS ACTION COMPLAINT - 1

3. Individual and representative Plaintiff Thomas Merck is a resident of Coshocton, Ohio.

4. Defendant Walmart, Inc. is a retail company that is headquartered in Bentonville, Arkansas.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over Plaintiff's claims pursuant to 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff resides in this district, Plaintiff's report was delivered in this district, and because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## STATUTORY BACKGROUND

7. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: First, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing.  Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

8. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. § 1681.

9. Congress was particularly concerned about the use of background reports in the

CLASS ACTION COMPLAINT - 2

employment context, and therefore defined the term "consumer reports" to explicitly include background reports procured for employment purposes.  *See* 15 U.S.C. § 1681a(d)(1)(B).

10. The FCRA requires that any person who uses a report for employment purposes must:

> before taking any adverse action based in whole or in part on the report . . . provide to the consumer to whom the report relates –
> (a) a copy of the report; and
>
> (b) a description in writing of the rights of the consumer under this subchapter, as prescribed by the [Consumer Financial Protection] Bureau under section 1681g(c)(3).15 U.S.C. § 1681b(b)(3).

11. The FCRA defines adverse action as "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee" and/or as "any action taken or determination that is . . . adverse to the interests of the consumer."  *See* 15 U.S.C. §§ 1681a(k)(1)(B)(ii), 1681a(k)(1)(B)(iv)(II).

12. This pre-adverse action notification provision protects applicants and employees by "provid[ing] the consumer with knowledge of information the [consumer reporting agency] has reported about him or her that is going to result in adverse action in an employment context, affording the individual an opportunity to respond to it."  FTC Advisory Opinion to Leathers (Sept. 9, 1998), available at 1998 WL 34323725; *see also Moore v. Rite Aid Hdqtrs. Corp.*, No. 13-cv-1515, 2015 WL 3444227, at *4 (E.D. Pa. May 29, 2015) (citing *Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 848 F. Supp. 2d 532, 537 (E.D. Pa. 2012)) ("Section 1681b(b)(3)(A) thus requires an employer to provide job applicants with their background report, summary of rights, and a 'real opportunity' to contest the contents of the background report before the employer relies on the report to take an adverse action against the

CLASS ACTION COMPLAINT - 3

applicant."). This requirement is particularly important "where the information contained in the report (such as a criminal record) would automatically disqualify the individual from employment," so that the consumer has a chance to address the information "in case the report is inaccurate." FTC Advisory Opinion to Rosen (June 9, 1998), available at 1998 WL 34323763; *Long v. Se. Pennsylvania Transportation Auth.*, 903 F.3d 312, 319 (3d Cir. 2018).

13. Many other provisions of the FCRA are also notice provisions. *See* 15 U.S.C. § 1681b(4)(B) (notification of national security investigation); § 1681c(h) (notification of address discrepancy); § 1681d(a) (disclosure of investigative report); § 1681g (full file disclosure to consumers); § 1681k(a)(1) (disclosure regarding the use of public record information); § 1681h (form and conditions of disclosure); § 1681m(a) (notice of adverse action).

14. Like the other notice provisions in the FCRA, the pre-adverse action notice provision puts consumers on notice of specifically the information that is being reported about them to their employer or prospective employer and allows consumers to dispute that information before adverse action is taken against them.

15. As discussed below, Walmart routinely violated the FCRA, and consumers' rights, by failing to provide the required copy of the report before taking adverse action against consumers.

CLASS ACTION COMPLAINT - 4

16. Failure to provide a copy of the report relied upon in taking an adverse employment action is an injury in fact, because failure to provide the statutorily-mandated disclosure harms the precise concrete interest that Congress sought to protect and creates a risk of real harm. *See Long v. Se. Pennsylvania Transportation Auth.*, 903 F.3d 312, 323 (3d Cir. 2018); *Strubel v. Comenity Bank*, 842 F.3d 181, 190 (2d Cir. 2016).

**FACTUAL BACKGROUND RELATING TO PLAINTIFF AND DEFENDANT'S STANDARD PRACTICES**

17. In May of 2016, Plaintiff applied for work at Walmart. The yearly salary for the position for which Plaintiff applied was under $75,000.

18. On or around May 27, 2016, non-party Sterling Infosystems ("Sterling") furnished a background report on Plaintiff to his prospective employer. Sterling is a consumer reporting agency that sells employment background reports to employers.

19. Plaintiff's report and the reports of other Class members were not procured in connection with any investigation of suspected misconduct relating to employment, or compliance with federal, state, or local laws and regulations, the rules of a self-regulatory organization, or any suspected violation of preexisting written policies of the employer.

20. Sterling also sells employers a service relating to when an employer notifies Sterling that the employer intends to take adverse action against an applicant based on information in the applicant's background report. Pursuant to this service, Sterling sends a letter to the applicant along with a copy of the report on which the employer relied. In short, Sterling offers to act as the employer's agent in fulfilling the employer's obligation to provide pre-adverse action notice as required by the FCRA.

CLASS ACTION COMPLAINT - 5

21. The report Sterling sent to Walmart contained a code that indicated Sterling believed that Plaintiff had a criminal record that he did not disclose on his job application (the "Code").

22. The presence of the Code on Plaintiff's report was *the* reason Plaintiff's application to Walmart was not successful.

23. On June 6, 2016, Walmart, through its agent Sterling, sent Plaintiff a purported pre-adverse action notice, which is attached as Exhibit 1. This purported pre-adverse action notice attached a report, which is included here as Exhibit 2.

24. The report attached to the purported pre-adverse action notice, however, was not the full report Walmart used to evaluate Plaintiff for employment.

25. The report that Sterling sent to Walmart and the report on which Walmart based its decision not to hire Plaintiff both contained the Code.

26. The Code, however, was not present on the version of the report attached to the pre-adverse action notice that was sent to Plaintiff.

27. The Code and other information missing from Plaintiff's report caused Plaintiff harm. Walmart's defective pre-adverse action notice denied Plaintiff the key information he needed to know – why his application for employment was being denied.

28. Plaintiff was not aware of the deficiencies in Walmart's pre-adverse action notice until discovery in a related case, *Gambles v. Sterling Infosystems*, S.D.N.Y. Case No. 1:15-cv-09746, brought the full report to light. Plaintiff became aware of the deficiency during a deposition taken on March 15, 2019, so this claim is timely pursuant to 15 U.S.C. § 1681p (statute of limitations is five years from date of violation or two years from date of Plaintiff's

CLASS ACTION COMPLAINT - 6

discovery of violation, whichever occurs first).

29. Plaintiff experienced a concrete injury in the form of being deprived of the actual report that Walmart used to make its employment decision. Plaintiff was therefore being deprived of an opportunity to rectify the perceived deficiencies in his employment application.

30. Walmart easily could have monitored Sterling's fulfillment of its obligations to ensure that Walmart's obligations were properly fulfilled.

31. But Walmart failed to do so. Walmart did not adequately supervise or oversee Sterling's administration of the pre-adverse action notice that Walmart was obligated to provide in accordance with the FCRA.

32. In violation of 15 U.S.C. § 1681b(b)(3)(A), Walmart took adverse action against Plaintiff, and other Class members, based on undisclosed consumer report information, without first providing Plaintiff and other Class members with a copy of the pertinent consumer reports.

**CLASS ACTION ALLEGATIONS**

Plaintiff asserts his pre-adverse action notice claim on behalf of the Class defined as follows:

> All individuals against whom Defendant took adverse action based in whole or in part on information contained in a consumer report where the consumer report provided with Defendant's pre-adverse action omitted information contained in the report on which Defendant relied, within the five years predating the filing of this Complaint and continuing through the date the class list is prepared.

33. <u>Identifiability</u>: The Class can be identified. Walmart's job application is web-based, and the data entered therein is likely easily exportable and can be filtered by date. Further, Walmart knows who it terminated or otherwise took adverse action against based on information contained in a consumer report. Walmart maintains access to copies of reports it

CLASS ACTION COMPLAINT - 7

received from Sterling and Sterling is able to determine the contents of reports included with the pre-adverse action notice letters it sent on Walmart's behalf.

34. <u>Numerosity</u>: The Class is so numerous that joinder of all Class members is impracticable. On information and belief, the class consists of well over 100 members.

35. <u>Commonality</u>: Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members, including but not limited to:

    a) Whether Walmart uses consumer reports for employment purposes;

    b) Whether Walmart violated the FCRA by taking adverse actions on the basis of information in consumer reports, without first furnishing copies of the reports on which it relied to the affected persons;

    c) Whether Walmart was on notice of the pre-adverse action notice requirements of the FCRA;

    d) Whether Walmart's violations of the FCRA were negligent, knowing, and/or willful;

    e) The proper measure of statutory damages; and

    f) The proper measure of punitive damages.

36. <u>Typicality</u>: Plaintiff's claims are typical of the members of the Class. It is typical for Walmart to procure consumer reports for employment purposes, and Walmart typically takes adverse action against employees and applicants without first providing a copy of the relevant consumer report. The FCRA violations suffered by Plaintiff are typical of those suffered by other Class members, and Walmart treated Plaintiff consistently with other Class members

in accordance with its standard policies and practices.

37. <u>Adequacy</u>: Plaintiff is a member of the Class and will fairly and adequately protect the interests of the Class. Further, Plaintiff has retained counsel experienced in complex class action litigation generally and in FCRA litigation in particular.

38. This case is maintainable as a class action under Rule 23 because prosecution of actions by or against individual members of the Class would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Walmart. Further, adjudication of each individual Class member's claim as a separate action could prospectively be dispositive of the interest of other individuals not a party to such action, impeding their ability to protect their interests.

39. Class certification is also appropriate under Rule 23 because questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Walmart's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Walmart's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

CLASS ACTION COMPLAINT - 9

40. Plaintiff intends to send notice to all members of the Class to the extent required by Rule 23. The names and addresses of the class members are available from the records of Walmart and its agents.

**CLAIM FOR RELIEF**

**COUNT I**
*Failure to Provide Pre-Adverse Action Notice*
**15 U.S.C. § 1681b(b)(3)(A)**
**(On Behalf of Plaintiff and the Class)**

41. Walmart violated the FCRA by failing to provide Plaintiff and Class members with a copy of the consumer report that was used to take adverse employment action against them. *See* 15 U.S.C. § 1681b(b)(3)(A).

42. Walmart acted willfully and in knowing or reckless disregard of its obligations and the rights of Plaintiff and the other Class members.

43. Walmart's willful conduct is reflected by, among other things, the fact that it violated a clear statutory mandate set forth in 15 U.S.C. § 1681b(b)(3)(A), and that Walmart certified that it would comply with 15 U.S.C. § 1681b(b)(3)(A).

44. Walmart's willful conduct is further reflected by the following:

(a) The FCRA's pre-adverse action notice provision was enacted in 1996, Walmart has had since its enactment to become compliant;

(b) Walmart's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute;

(c) Despite the pellucid statutory text and there being a depth of guidance, Walmart has adopted a policy of taking adverse action without first providing a copy of the consumer's

CLASS ACTION COMPLAINT - 10

report and a summary of his or her rights; and

(d) By adopting such a policy, Walmart voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

45. Plaintiff and the Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A). Plaintiff and the Class members are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2). Plaintiff and the Class members are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## PRAYER FOR RELIEF

46. WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for relief as follows:

   a) determining that this action may proceed as a class action under Rule 23;

   b) designating Plaintiff as representative for the Class and designating Plaintiff's counsel as counsel for the Class;

   c) issuing proper notice to the Class at Walmart's expense;

   d) declaring that Walmart committed multiple, separate violations of the FCRA;

   e) declaring that Walmart acted willfully, in deliberate or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

   f) awarding actual statutory and punitive damages as provided by the FCRA;

   g) awarding reasonable attorneys' fees and costs as provided by the FCRA; and

   h) granting further relief, in law or equity, as this Court may deem appropriate and just as provided by the FCRA.

CLASS ACTION COMPLAINT - 11

**DEMAND FOR A JURY TRIAL**

Plaintiff demands a trial by jury.

RESPECTFULLY SUBMITTED AND DATED this 3rd day of June, 2020.

MEYER WILSON

By: __/s/ Michael J. Boyle, Jr.__
Michael J. Boyle, Jr. (0091162)
Matthew R. Wilson (0072925)
1320 Dublin Road, Suite 100
Columbus, Ohio 43215
Telephone: (614) 705-0951
Facsimile:  (614) 224-6066
Email:  mboyle@meyerwilson.com
Email: mwilson@meyerwilson.com

Beth E. Terrell (*pro hac vice* to be filed)
Erika L. Nusser (*pro hac vice* to be filed)
TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 319-5450
Email:  bterrell@terrellmarshall.com
Email:  enusser@terrellmarshall.com

E. Michelle Drake (*pro hac vice* to be filed)
Joseph C. Hashmall (*pro hac vice* to be filed)
BERGER MONTAGUE PC
43 S.E. Main Street, Suite 505
Minneapolis, MN 55414
Telephone: (612) 594-5999
Email: emdrake@bm.net
Email: jhashmall@bm.net