UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**THOMAS MERCK,**

    **Plaintiff,**

v.

**WALMART INC.,**

    **Defendant.**

:
:
:

**Case No. 2:20-cv-2908**
**Judge Sarah D. Morrison**
**Chief Magistrate Judge**
**Elizabeth A. Preston Deavers**

## OPINION AND ORDER

Plaintiff Thomas Merck brings this action, individually and as representative of a proposed class, alleging that Defendant Walmart Inc. violated the pre-adverse action notice requirements of the Fair Credit Reporting Act ("FCRA" or, the "Act"), 15 U.S.C. § 1681(b)(3). Walmart filed a Motion to Dismiss. (Mot. to Dismiss, ECF No. 20.) Mr. Merck responded (Resp., ECF No. 26), and Walmart has filed its reply (Reply, ECF No. 30). The matter is now ripe for consideration.

The Court has thoroughly reviewed the record and determines that oral argument is unnecessary. For the reasons set forth below, Walmart's Motion to Dismiss is **DENIED**.

**I.     BACKGROUND**

The following allegations, taken from the First Amended Complaint (FAC, ECF No. 16), are considered as true. *See Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016).

In May 2016, Mr. Merck applied for employment at Walmart. (FAC, ¶ 18.)

The position at Walmart paid approximately $2.00/hour more than his job at the time. (*Id.*, ¶ 49.)

After receiving his application, non-party Sterling Infosystems provided Walmart with a background report on Mr. Merck. (*Id.*, ¶ 19.) Sterling is a consumer reporting agency that sells employment background reports to employers. (*Id.*, at ¶ 19.) When an employer notifies Sterling that it intends to take an adverse action against an applicant based on the background report, Sterling sends a letter to the applicant along with a copy of the report. (*Id.*, ¶ 21.) This letter is intended to fulfill the employer's obligation to provide a "pre-adverse action notice," as required by the FCRA. (*Id. See also* 15 U.S.C. § 1861b(b)(3)(A)).

The report that Sterling sent to Walmart about Mr. Merck contained a code indicating that he had criminal convictions that were not disclosed on his job application ("the Code"). (Id., ¶ 22.) Mr. Merck alleges that the presence of that Code "was *the* reason" why Walmart did not hire him. (*Id.*, ¶ 23 (emphasis in original).) Mr. Merck's criminal record consists of a single misdemeanor conviction from 2001. (*Id.* ¶ 24.) Mr. Merck further alleges that, according to Walmart's public statements, a single misdemeanor conviction does not disqualify an individual from being hired by Walmart. (*Id.*, ¶¶ 24–25.)

On June 6, 2016, Sterling sent a pre-adverse action notice to Mr. Merck, notifying him that Walmart was rejecting his application due to information contained in the background report. (*Id.*, ¶ 26.) But, the background report attached to Sterling's letter did not contain the Code. (*Id.*, ¶ 27–30.) As a result, Mr. Merck

2

believed that he was rejected based on his criminal conviction. (*Id.*, ¶ 32.) Mr. Merck first learned of Walmart's reason for rejecting his application in March 2019, when discovery in a related case[1] brought that information to light. (*Id.*, ¶ 47.)

Mr. Merck alleges that, had he been given a copy of the background report with the Code, he would have known that his application was rejected because Sterling determined that he had failed to disclose his criminal conviction. (*Id.*, ¶ 35.) He further alleges that he would have asked Sterling or Walmart to explain the meaning of the Code and the true reason for the rejection of his application. (*Id.*, ¶¶ 36–39.)

Walmart allows an applicant that receives a pre-adverse action notice to explain the information contained in his background report. (*Id.*, ¶ 40.) That process would have afforded Mr. Merck an opportunity to explain that his failure to disclose the conviction on his application was an honest mistake. (*Id.*, ¶ 39.) Mr. Merck also alleges that, had he known the true reason why his application was unsuccessful, he would have re-applied to Walmart with his conviction fully disclosed. (*Id.*, ¶ 41.) Mr. Merck believes that "[h]is application would have been successful" had he re-applied. (*Id.*, ¶ 42.) But, because he believed he was ineligible for employment based on the information in the background report that he received (*i.e.*, his misdemeanor conviction), Mr. Merck did not re-apply. (*Id.*, ¶ 43.)

Mr. Merck alleges that Walmart violated the FCRA by taking adverse action against him and other class members based on undisclosed consumer report

---

[1] *Gambles v. Sterling Infosystems*, S.D.N.Y. Case No. 1:15-cv-09746.

information without first providing a copy of the consumer report on which it actually relied. (*Id.*, ¶¶ 52, 62–66.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Directv, Inc. v. Treesh*, 487 F.3d, 471, 476 (6th Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

4

### III. ANALYSIS

Walmart argues that the FAC should be dismissed on four grounds: (i) that it does not allege sufficient facts to demonstrate Article III standing; (ii) that the FCRA claim is time-barred; (iii) that it fails to state a claim under the FCRA; and (iv) that it fails to plead that Walmart willfully violated the FCRA. The Court will address each argument *seriatim*.

#### A. Article III Standing

Standing is "the threshold question in every federal case," and, if the plaintiff lacks standing, the federal court lacks jurisdiction. *Warth v. Seldin,* 422 U.S. 490, 498 (1975). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Id.* As the Supreme Court explained nearly thirty years ago,

> a party seeking to invoke a federal court's jurisdiction must demonstrate three things: (1) "injury in fact," by which we mean an invasion of a legally protected interest that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," [*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)] (citations, footnote, and internal quotation marks omitted); (2) a causal relationship between the injury and the challenged conduct, by which we mean that the injury "fairly can be traced to the challenged action of the defendant," and has not resulted "from the independent action of some third party not before the court," *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 41–42 [] (1976); and (3) a likelihood that the injury will be redressed by a favorable decision, by which we mean that the "prospect of obtaining relief from the injury as a result of a favorable ruling" is not "too speculative," [*Allen v. Wright*, 468 U.S. 737, 752 (1984)]. These elements are the "irreducible minimum," *Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 [] (1982), required by the Constitution.

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 663–64 (1993). The burden is on the party invoking federal

5

jurisdiction to demonstrate Article III standing. *Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008). At the pleading stage, the plaintiff must "clearly allege facts demonstrating each element" required to establish standing. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016) (quotation omitted) (cleaned up).

Walmart challenges Mr. Merck's standing only on the first element requiring an injury in fact.[2] Specifically, Walmart argues that Mr. Merck has alleged only a procedural violation of FCRA, and that he does not have a "concrete" injury-in-fact because the pre-adverse action notice is intended to protect only against the reporting of inaccurate information. (*See, e.g.,* Mot. to Dismiss, 6–9.)

For an injury to be cognizable under current standing doctrine, it must be particularized—meaning, it "affect[s] the plaintiff in a personal and individual way." *Spokeo,* 136 S.Ct. at 1548 (quotation and citations omitted). The injury must also be concrete. It must "actually exist"—it must be "real" and "not abstract." *Id.* (quotation and citations omitted). However, a concrete injury may be intangible. *Id.* at 1549 (citations omitted). Further, "Congress may elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Id.* (quotation omitted) (cleaned up). However, this "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to

---

[2] On March 12, 2021, Walmart stated that its Motion to Dismiss "is based on the first two elements of standing, asserting Mr. Merck suffered (a) no injury in fact, (b) that one may fairly trace to the conduct he challenges." (ECF No. 34.) This statement is belied by Walmart's Motion and Reply, both of which address only the "injury in fact" element of standing.

vindicate that right." *Id.* For example, a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* (citing, *inter alia*, *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing.")).

In *Spokeo*, the Supreme Court addressed the two necessary elements of injury-in-fact—particularization and concreteness—in the context of a FCRA claim. In that case, the plaintiff alleged that defendant Spokeo had included false information about him in a consumer report and thus violated the FCRA by failing to "follow reasonable procedures to assure the maximum possible accuracy" of the report. *Id.* at 1542 (quoting 15 U.S.C. § 1681e(b)). The Ninth Circuit held that the plaintiff had sufficiently alleged an injury-in-fact in the violation of his statutory rights because "personal interests in the handling of his credit information are individualized rather than collective." *Id.* at 1546 (quotation omitted). Although the Supreme Court did not disagree with this conclusion as to particularization of injury, it remanded the case because the Ninth Circuit had not considering whether the plaintiff had shown the injury to be "concrete." *Id.* at 1548 ("Particularization is necessary to establish injury in fact, but it is not sufficient. An injury in fact must also be 'concrete.'"). The Supreme Court noted that a showing of concrete injury was required because "a violation of one of the FCRA's procedural requirements may result in no harm." *Id.* at 1550.

7

Since *Spokeo*, several courts have addressed the issue currently before this Court: Does an applicant suffer an injury-in-fact from an employer's failure to provide, in advance of taking adverse action, a copy of the report on which it based the adverse action, even when there is no allegation that the report contains inaccurate information? Although the Sixth Circuit has not addressed this issue, the greater weight of authority indicates that the answer is yes. *Robertson v. Allied Sols., LLC*, 902 F.3d 690, 697 (7th Cir. 2018) (finding that plaintiff had standing, as "[p]roviding context may be more valuable than contesting accuracy"); *Sharp v. Technicolor Videocassette of Mich., Inc.*, No. 2:18-CV-02325-CGC, 2019 WL 167423, at * (W.D. Tenn. Jan. 10, 2019) (same, quoting *Robertson*, 902 F.3d at 697); *Long v. Se. Pa. Transp. Auth.*, 903 F.3d 312, 318, 324 (3d Cir. 2018) (same, noting that "[t]he required pre-adverse-action copy of an individual's consumer report . . . may also enable him to advocate for it to be used fairly"); *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 638 (E.D. Va. 2016) (same, explaining that the plaintiff class was "deprived of the opportunity to explain any negative records in their consumer reports and discuss the issues raised in their reports with [d]efendants before suffering adverse employment action"). *But see*, *Dutta v. State Farm Auto. Ins. Co.*, 895 F.3d 1166, 1174–75 (9th Cir. 2018) (though observing that the FCRA was enacted to ensure fair *and* accurate credit reporting, holding that a plaintiff who alleged that he was not provided a copy of his consumer report before defendant took adverse action against him did not allege injury-in-fact because the report was materially accurate).

8

The Sixth Circuit instructs that "the FCRA is to be liberally construed in favor of the consumer" and its provisions read "in a manner consistent with the statute's other provisions." *Jones v. Federated Fin. Reserve, Corp.*, 144 F.3d 961, 964 (6th Cir. 1998) (citations omitted). The FCRA's underlying purpose is

> to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information . . .

15 U.S.C. § 1681(b). "Thus, the FCRA is aimed at protecting consumers from inaccurate information in consumer reports *and* at the establishment of credit reporting procedures that utilize correct, relevant, and up-to-date information in a confidential and responsible manner." *Jones*, 144 F.3d at 965 (citing *Pinner v. Schmidt,* 805 F.2d 1258, 1261 (5th Cir. 1986)) (emphasis added). In other words, Congress intended the FCRA to address more than just inaccuracies within consumer reports; it also sought to ensure that a consumer's "relevant" information is used "responsibl[y]," and in a manner that is "fair and equitable." *Id.*

The FCRA's pre-adverse action notice requirement is found in 15 U.S.C. § 1681b(b)(3)(A) ("Subpart A"), which provides:

> [B]efore taking any adverse action based in whole or in part on [a consumer report used for employment purposes], the person intending to take such adverse action shall provide to the consumer to whom the report relates—
>
> (i)  a copy of the report; and
>
> (ii) a description in writing of the rights of the consumer under this subchapter . . . .

9

In other words, Subpart A requires the user of a consumer report to provide specified information to a consumer before it takes adverse action[3] against the consumer. Supbart A makes no mention of the purpose behind the disclosure it requires—whether it be to correct inaccuracies or otherwise.

The Court further contrasts Subpart A with the following paragraph, 15 U.S.C. § 1681b(b)(3)(B) ("Subpart B"), which creates an exception to Subpart A for employers taking adverse action against applicants for truck-driving positions. Under Supbart B, the employer has no duty to provide a copy of the report; it can simply notify the applicant that an adverse action was based on the report. 15 U.S.C. § 1681b(b)(3)(B)(i)(I). It must also notify the applicant of their right to "request a free copy of a report and [to] dispute with the consumer reporting agency the accuracy or completeness of any information in a report." 15 U.S.C. § 1681b(b)(3)(B)(i)(IV). Further, the Subpart B notifications may be provided after the employer takes adverse action against the applicant. 15 U.S.C. § 1681b(b)(3)(B)(i).

Comparing the two provisions, three differences stand out. First, only Subpart A compels the user to disclose the consumer report. Second, only Subpart A requires disclosure prior to the adverse action. And, third, only Subpart B limits the consumer's ability to challenge the report to its "accuracy or completeness." The implication, then, is that an employer's disclosure obligations under Subpart A "exist to serve interests beyond the problem of inaccurate reports." *Robertson*, 902

---

[3] "Adverse action" includes the denial of employment. 15 U.S.C. § 1681a(k)(1)(B)(ii).

10

F.3d at 696.

Other parts of the FCRA support this conclusion. For example, the FCRA identifies at least three distinct actors with respect to any consumer report—agencies, users, and consumers, each of which has specific rights and duties in the disclosure process. A consumer reporting agency aggregates data and creates a report. The agency then supplies a consumer report to a user, which may rely on the report to make decisions about a consumer. Although the FCRA links agency disclosure rules to the accuracy of the information contained in the reports, the duties imposed on users allow for more broad-based discussion with the consumer about the report's contents. *See Robertson*, 902 F.3d at 696–97 (contrasting in detail the disclosure obligations of agencies and users).

Under Subpart A, a consumer can use the information contained in the pre-adverse action notice to achieve a statutory purpose even when he does not dispute its accuracy. The purpose of the pre-adverse action notice provision is to provide the consumer with information necessary to respond to the potential employer's concerns based on the report—even if the report is entirely accurate—before any adverse action is taken. *See Long*, 903 F.3d at 324 ("[T]aking an adverse employment action without providing the required consumer report is the very harm that Congress sought to prevent[.]") (internal quotation and citation omitted). At that point, the consumer still has an interest in trying to persuade the employer that the information in the report should not prevent the applicant's success. The Seventh Circuit stated it well:

11

> The substantive interest behind a user's disclosure obligation is the one at issue here: allow the consumer to review the reason for any adverse decision and to respond. These rights are independent of any underlying factual disputes. A consumer might, for example, wish to concede the facts presented in the report but to bring additional facts to the employer's attention that put matters in a better light for the consumer.

*Robertson*, 902 F.3d at 696. And, as both the Seventh and Third Circuits recognized, providing context for factual information in a consumer report "may be more valuable than contesting accuracy." *Id.* at 697. *See also Long*, 903 F.3d at 319 ("The required pre-adverse-action copy of an individual's consumer report allows him to ensure that the report is true, and may also enable him to advocate for it to be used fairly—such as by explaining why true but negative information is irrelevant to his fitness for the job.").

In this case, Mr. Merck alleges that Walmart failed to provide a copy of the report that it actually relied upon before taking an adverse employment action against him. (FAC, ¶¶ 26–31.) This is synonymous with providing no report at all. And, while Mr. Merck does not allege that the actual report Walmart relied upon contains inaccurate information, he does allege that, had he been provided with the report actually relied upon, he would have been able to "rectify the perceived deficiencies in his employment application" (*Id.*, ¶ 48)—*i.e.*, he could have explained why true but negative information contained in the report was irrelevant to his fitness for the job.

Accordingly, Mr. Merck has adequately alleged that he was deprived of the benefit afforded by the FCRA to demonstrate standing under Article III. His injury is concrete and particular to him in that he was entitled to receive and review the

12

actual consumer report that Walmart relied upon. When he was provided with a copy of a different report, he was deprived of the information that could have allowed him to respond to Walmart's concerns.

The remaining requirements for standing are not in dispute and are also met. The Court will not dismiss the FAC on standing grounds.

### B. Statute of limitations

Walmart next seeks dismissal on the grounds that Mr. Merck's FCRA claim is time-barred. According to Mr. Merck, Walmart violated the FCRA in June 2016 (FAC, ¶ 26), he discovered the violation on March 15, 2019 (*Id.* ¶ 47), and this action was filed on June 3, 2020 (ECF No. 1). The FCRA sets the statute of limitations for claims brought under the Act as follows:

> [a]n action to enforce any liability created under this subchapter may be brought . . . not later than the earlier of—(1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs.

15 U.S.C. § 1681p. Because Mr. Merck brought his claims more than two years after Walmart's alleged violation, the issue here centers on the date he discovered it.

The FCRA does not define the term "discovery" but its statute of limitations is a common formulation of what is typically referred to as a "discovery rule." "[I]n the statute of limitations context, the word 'discovery' is often used as a term of art in connection with the 'discovery rule,' a doctrine that delays accrual of a cause of action until the plaintiff has 'discovered' it." *Merck*, 559 U.S. at 644. However, when legislators use the word "discovery" in this context, "courts have typically

13

interpreted the word to refer not only to actual discovery, but also to the hypothetical discovery of facts a reasonably diligent plaintiff would know." *Id.* at 645 (collecting cases).

In the Sixth Circuit, the FCRA "'limitations period begins to run when a claimant discovers the facts that give rise to a claim and not when a claimant discovers that those facts constitute a legal violation.'" *Rocheleau v. Elder Living Constr., LLC*, 814 F.3d 398, 401 (6th Cir. 2016) (favorably quoting *Mack v. Equable Ascent Fin., LLC*, 748 F.3d 665–66 (5th Cir. 2014)). Accordingly, the FCRA's two-year statute of limitations begins to run when "a reasonably diligent plaintiff" would have discovered the facts comprising the alleged violation. *Id. See also Merck*, 559 U.S. at 644.

The factual allegations, construed in a light most favorable to him, show that Mr. Merck was reasonably diligent in learning of the alleged violation. The cover letter Sterling sent to Mr. Merck told him that "[e]nclosed is a Consumer Report . . . that was requested by Walmart . . . in connection with your employment." (FAC, Ex. 1.) Based on that representation, he believed that the decision not to hire him was based on the information contained in the report he received, and he concluded that his application was denied for the fact of his misdemeanor conviction—not because his application failed to disclose it. (*Id.*, ¶ 32–34, Ex. 1.) Mr. Merck alleges, in essence, that he did not know what he did not know, because Walmart failed to provide him with the report it relied upon in deciding not to hire him.

14

The FAC sufficiently alleges that Mr. Merck's claims have been brought within the applicable statute of limitations.

## C. Failure to State a Claim for Relief

Walmart next seeks dismissal of the FAC arguing that "the Code" is not a consumer report. (Mot. to Dismiss, 11–13.) Walmart's argument is an exercise in splitting hairs by attempting to distinguish between a consumer report and the information comprising that report. It does not support dismissal of Mr. Merck's claims.

Rather than engage in Walmart's argument that "the Code" is not a "consumer report" in and of itself, it is more helpful to look at what constitutes a consumer report under the FCRA. The FCRA defines a consumer report, in relevant part, as follows:

> any written . . . communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, . . . character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for . . . employment purposes.

15 U.S.C. § 1681a(d)(1)(B). As discussed in depth above, FCRA requires an employer to provide an application with a copy of his consumer report before taking an adverse action on the basis of that report. A portion of Subpart A is worth repeating here:

> [B]efore taking any adverse action **based in whole or in part on [a consumer report** used for employment purposes], the person intending to take such adverse action **shall provide** to the consumer to whom the report relates—

15

>     (i)     **a copy of the report** . . .

15 U.S.C. § 1681b(b)(3)(A) (emphasis added). Also as noted above, the purpose of this requirement is to provide the consumer with information necessary to any concerns based on the report. It logically follows that Supbart A requires not just "**any** report" or "**a** report"; rather, the employer is required to provide an applicant a copy of "**the** report" that forms the basis, in whole or in part, of its decision not to hire that applicant. If the applicant is given a different report, an incomplete report, or no report at all, he cannot meaningfully respond to the employer's concerns.

This conclusion is bolstered by the Sixth Circuit's guidance that the FCRA is to be liberally construed in favor of the consumer and read in a manner that is consistent with the statute's other provisions. *Jones*, 144 F.3d at 964. This guidance tells us that, in requiring an employer to send an applicant "the report" that it relied upon, it necessarily means the *exact* report that the employer relied upon. To conclude otherwise would make the notice requirement meaningless.

None of the cases on which Walmart relies support a different conclusion. First, despite citing to *Reid v. Kroger Co.*, No. 1:16-CV-805, 2018 WL 1327242 (S.D. Ohio Mar. 15, 2018) (Black, J.), Walmart admits that the theory in that case is entirely different than the theory in this case. In *Reid*, the plaintiff argued that an indicator placed by an agency on a consumer report, reflecting that the applicant's report did not satisfy the employer's hiring policies, was an adverse action. The court disagreed, but there is simply no comparison to be drawn in this case. Second, Walmart cites *Cheatham v. McCormick*, 100 F.3d 956, 1996 WL 662887 (6th Cir.

16

1996), supposedly for the proposition that the Code was not a consumer report, because it did not "'bear[] on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living . . . used or expected to be used' to establish eligibility for employment." (Mot. to Dismiss, 12 (quoting 15 U.S.C. § 1681a(d)).) However, in *Cheatham*, the Sixth Circuit concluded that a report prepared on the plaintiff was not a consumer report for another reason entirely—because "[i]t was not used, expected to be used, or compiled for any of the purposes listed in § 1681a(d), and it was not prepared by a consumer reporting agency." *Id.* at *2. Again, there is nothing to be learned and applied to the case at bar. Third and finally, Walmart cites *Ernst v. Dish Network, LLC*, 49 F. Supp. 3d 377 (S.D. N.Y. 2014). In *Ernst*, the court found that a summary report prepared by a consumer reporting agency, which included an indicator reflecting that plaintiff-employee's background report reflected that he was "high risk" according to criteria established by the defendant-employer, was a "consumer report" for purposes of the FCRA because the indicator "bears on [the consumer's] character and reputation, as well as his mode of living." *Id.* at 383. Although Walmart proposes that the court's finding hinged on the fact that the indicator was facially disparaging, a close review of the court's decision indicates otherwise.

Here, Mr. Merck has alleged that Walmart reviewed and relied upon a consumer report, that Mr. Merck was sent a consumer report, and that the consumer report sent to Mr. Merck contained different information than the one

17

Walmart reviewed and relied upon. Taken as true, this is sufficient to state a claim under the FCRA.

### D. Failure to plead a willful violation of the FCRA

Walmart's final argument is that the FAC fails to allege a *willful* violation of the FCRA, and that its conduct falls under the "safe harbor" of *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 70 (2007). (Mot. to Dismiss, 13–14). While holding that "reckless disregard of a requirement of FCRA would qualify as a willful violation[,]" the Supreme Court in *Safeco* noted that "a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco*, 551 U.S. at 70–71.

Walmart argues that Mr. Merck's claims are based on "novel legal theories," necessarily implying that its own interpretation of the pre-adverse action notification requirement was reasonable. The Court disagrees. The authority cited in Walmart's briefing instead indicates that Walmart itself advances a novel legal theory by arguing that information (i) contained in a consumer report, (ii) prepared by a consumer reporting agency, and (iii) upon which it took adverse action against an applicant, need not be disclosed prior to taking the adverse action.

Mr. Merck sufficiently pled a willful violation of the FCRA by Walmart.

## IV. CONCLUSION

For the reasons set forth above, Walmart's Motion to Dismiss (ECF No. 20) is **DENIED**.

    **IT IS SO ORDERED.**

/s/ Sarah D. Morrison  
**SARAH D. MORRISON**  
**UNITED STATES DISTRICT JUDGE**
