IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

THOMAS MERCK,

      Plaintiff,

v.                                               Civil Action 2:20-cv-2908
                                                 Judge Sarah D. Morrison
                                                 Magistrate Judge Elizabeth P. Deavers

WALMART, INC.,

      Defendant.

## OPINION AND ORDER

This matter is before the Court for consideration of the Motion to Compel filed by Defendant Walmart, Inc. ("Walmart). (ECF No. 56.)   Plaintiff Thomas Merck has filed a Response (ECF No. 57) and Walmart has filed a Reply (ECF No. 61).  For the following reasons, the Motion to Compel (ECF No. 56) is **DENIED.**   Further, the Court, having fully considered the parties' briefing, finds oral argument to be unnecessary.  Accordingly, Walmart's request for oral argument is **DENIED**.

### I.

Federal Rule of Civil Procedure 37 permits a party to file a motion for an order compelling discovery if another party fails to respond to discovery requests, provided that the motion to compel includes "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1).  Consistent with this, Local Rule 37.1 requires the parts to "exhaust[] among themselves all extrajudicial means for resolving their differences" before filing an objection, motion, application, or request relating to discovery. S.D. Ohio Civ. R. 37.1.  Local Rule 37.1 also allows parties to first seek an informal telephone

1

conference with the Judge assigned to supervise discovery in the case, in lieu of immediately filing a discovery motion. *Id.*

"District courts have broad discretion over docket control and the discovery process." *Pittman v. Experian Info. Sol., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018) (citation omitted). "'It is well established that the scope of discovery is within the sound discretion of the trial court.'" *Id.* (quoting *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993)). The Federal Rules of Civil Procedure provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." Fed. R. Civ. P. 26(b)(1). While a plaintiff should "not be denied access to information necessary to establish her claim," a plaintiff may not be "permitted to go fishing and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *In re Ohio Execution Protocol Litigation*, 845 F.3d 231, 236 (6th Cir. 2016) (citation omitted); *see also Gallagher v. Anthony*, No. 16-cv-00284, 2016 WL 2997599, at *1 (N.D. Ohio May 24, 2016) ("[D]istrict courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce.").

"The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Gruenbaum v. Werner Enter., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010) (citation omitted). If the movant makes this showing, "then the burden shifts to the non-movant to show that to produce the information would be unduly burdensome." *Prado v. Thomas*, No. 3:16-CV-306, 2017 WL 5151377, at *1 (S.D. Ohio Oct. 19, 2017) (citing *O'Malley v. NaphCare, Inc.*, 311 F.R.D. 461, 463 (S.D. Ohio 2015)); *see also* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment (stating that a party claiming undue burden or expense "ordinarily has far better information—perhaps the only information—with

2

respect to that part of the determination" and that a "party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them").

The Federal Rules of Civil Procedure grant parties the right to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1); *see also Siriano v. Goodman Mfg. Co., L.P.*, No. 2:14-CV-1131, 2015 WL 8259548, at *5 (S.D. Ohio Dec. 9, 2015). "*Relevance* is construed very broadly for discovery purposes." *Doe v. Ohio State Univ.*, No. 2:16-CV-171, 2018 WL 1373868, at *2 (S.D. Ohio Mar. 19, 2018) (emphasis in original) (citing *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998)). Despite being construed broadly, the concept of relevance is not unlimited. *Averett v. Honda of Am. Mfg., Inc.*, No. 2:07-cv-1167, 2009 WL 799638, at *2 (S.D. Ohio March 24, 2009). Indeed, "[t]o satisfy the discoverability standard, the information sought must have more than minimal relevance to the claims or defenses." *Doe*, 2018 WL 1373868 at *2 (citations omitted). Furthermore, when information is "negligibly relevant [or] minimally important in resolving the issues" this will not satisfy the standard. *Id.* (citation omitted).

"[T]he Federal Rules of Civil Procedure instruct district courts to limit discovery where its 'burden or expense . . . outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.'" *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (quoting former Fed. R. Civ. P. 26(b)(2)(C)(iii)). This Court has previously held that "[t]hese factors are retained in revised Fed. R. Civ. P. 26(b)(1), reflecting 'their original place in defining the scope of discovery'" because "'[r]estoring proportionality' is the touchstone of revised Rule 26(b)(1)'s

3

scope of discovery provisions." *Siriano*, 2015 WL 8259548, at *5 (citing Fed. R. Civ. P. 26(b)(1)). In analyzing the extent of the burden on the producing party, the Court of Appeals for the Sixth Circuit "has held that limiting the scope of discovery is appropriate when compliance 'would prove *unduly* burdensome,' not merely expensive or time-consuming." *Id.* (citing *Surles*, 474 F.3d at 305) (emphasis in original).

## II.

Plaintiff alleges that Walmart violated the pre-adverse action notice requirements of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681(b)(3). The allegations of Plaintiff's First Amended Complaint setting forth this claim were summarized by Judge Morrison in her Opinion and Order denying Walmart's Motion to Dismiss as follows:

> In May 2016, Mr. Merck applied for employment at Walmart. (FAC, ¶ 18.) The position at Walmart paid approximately $2.00/hour more than his job at the time. (*Id.*, ¶ 49.)
>
> After receiving his application, non-party Sterling Infosystems provided Walmart with a background report on Mr. Merck. (*Id.*, ¶ 19.) Sterling is a consumer reporting agency that sells employment background reports to employers. (*Id.*, at ¶ 19.) When an employer notifies Sterling that it intends to take an adverse action against an applicant based on the background report, Sterling sends a letter to the applicant along with a copy of the report. (*Id.*, ¶ 21.) This letter is intended to fulfill the employer's obligation to provide a "pre-adverse action notice," as required by the FCRA. (*Id. See also* 15 U.S.C. § 1861b(b)(3)(A)).
>
> The report that Sterling sent to Walmart about Mr. Merck contained a code indicating that he had criminal convictions that were not disclosed on his job application ("the Code"). (Id., ¶ 22.) Mr. Merck alleges that the presence of that Code "was *the* reason" why Walmart did not hire him. (*Id.*, ¶ 23 (emphasis in original).) Mr. Merck's criminal record consists of a single misdemeanor conviction from 2001. (*Id.* ¶ 24.) Mr. Merck further alleges that, according to Walmart's public statements, a single misdemeanor conviction does not disqualify an individual from being hired by Walmart. (*Id.*, ¶¶ 24–25.)
>
> On June 6, 2016, Sterling sent a pre-adverse action notice to Mr. Merck, notifying him that Walmart was rejecting his application due to information contained in the background report. (*Id.*, ¶ 26.) But, the background report attached to Sterling's letter did not contain the Code. (*Id.*, ¶ 27–30.) As a result, Mr. Merck believed that

4

he was rejected based on his criminal conviction. (*Id.*, ¶ 32.) Mr. Merck first learned of Walmart's reason for rejecting his application in March 2019, when discovery in a related case¹ brought that information to light. (*Id.*, ¶ 47.)

Mr. Merck alleges that, had he been given a copy of the background report with the Code, he would have known that his application was rejected because Sterling determined that he had failed to disclose his criminal conviction. (*Id.*, ¶ 35.) He further alleges that he would have asked Sterling or Walmart to explain the meaning of the Code and the true reason for the rejection of his application. (*Id.*, ¶¶ 36–39.) Walmart allows an applicant that receives a pre-adverse action notice to explain the information contained in his background report. (*Id.*, ¶ 40.) That process would have afforded Mr. Merck an opportunity to explain that his failure to disclose the conviction on his application was an honest mistake. (*Id.*, ¶ 39.) Mr. Merck also alleges that, had he known the true reason why his application was unsuccessful, he would have re-applied to Walmart with his conviction fully disclosed. (*Id.*, ¶ 41.) Mr. Merck believes that "[h]is application would have been successful" had he re-applied. (*Id.*, ¶ 42.) But, because he believed he was ineligible for employment based on the information in the background report that he received (*i.e.*, his misdemeanor conviction), Mr. Merck did not re-apply. (*Id.*, ¶ 43.)

Mr. Merck alleges that Walmart violated the FCRA by taking adverse action against him and other class members based on undisclosed consumer report information without first providing a copy of the consumer report on which it actually relied. (*Id.*, ¶¶ 52, 62–66.)

(Opinion and Order, ECF No. 37 at 1-4.)

Additional background relevant to the current motion is set forth in a declaration submitted by Plaintiff's counsel. (Declaration of Joseph C. Hashmall, ECF No. 69-2 at ¶ 4) ("Hashmall Decl."). Plaintiff's counsel first became aware of the code on March 15, 2019, when a Walmart witness, Larisa Ivy, testified at her deposition in *Gambles* regarding the existence of the code. (*Id.* at ¶¶ 4-8.) Plaintiff was a previously named Plaintiff in the *Gambles* litigation represented by his current counsel. (*Id.* at ¶ 3.) The *Gambles* litigation resulted in a class settlement, but Plaintiff settled his claim individually because he did not meet the definition of the settlement class. (*Id.* at ¶ 10.)

### III.

---

¹*Gambles v. Sterling Infosystems, Inc.*, Case No. 1:15-cv-09746-PAE (S.D.N.Y.).

Through its current motion, Walmart seeks to compel attorney-client privileged communications in connection with the following discovery requests restated here verbatim along with Plaintiff's responses.

**INTERROGATORY NO. 10:**

Identify all communications between You and any person concerning (i) Your application(s) for employment with Walmart; (ii) Walmart's background screening process; and/or (iii) any background report prepared in connection with Your application(s) for employment with Walmart.

**ANSWER:** Plaintiff objects to the extent this Interrogatory seeks disclosure of attorney-client communications. Plaintiff recalls no responsive non-privileged communications besides (1) the communications with Walmart listed in response to Interrogatory 8 and, (2) the possible communications with Robin Bender listed in response to Interrogatories 6 and 7.

**SUPPLEMENTAL ANSWER:** Plaintiff objects to the extent this Interrogatory seeks disclosure of attorney-client communications. Plaintiff recalls no responsive non-privileged communications besides (1) the communications with Walmart listed in response to Interrogatory 8, (2) the possible communications with Robin Bender listed in response to Interrogatories 6 and 7 and (3) a possible telephone call he may have made to either Walmart or Sterling shortly after receiving a copy of his report, in which he inquired as to why his application was being denied, and was told that he could not be provided with more information than appeared on the face of the preadverse action notice and on the background report.

**SECOND SUPPLEMENTAL ANSWER:** Shortly after his application to Walmart was unsuccessful, Plaintiff consulted a web forum regarding the issue, where users advised him to seek legal counsel. Plaintiff then went on a second website in an attempt to find legal counsel. Plaintiff does not remember the address of either website, and recounted all details he remembers about these interactions during his July 8, 2021 deposition.

**REQUEST NO. 2:**

All communications between You and any other person concerning your application(s) for employment with Walmart.

**RESPONSE:**

Plaintiff objects to this Request to the extent it seeks privileged communications between Plaintiff and his counsel. Subject to, and without waiving, this objection,

>    Plaintiff will produce documents related to his Walmart background check. Plaintiff has no other nonprivileged responsive documents.
>
>    Discovery is continuing.

Walmart explains that these discovery requests cover the time period from June 6, 2016 until June 3, 2020. (ECF No. 56 at 10.) Walmart also suggests that it may be necessary to re-open Plaintiff's deposition and possibly to depose his counsel.

## IV.

Walmart contends that the privileged communications it seeks are potentially dispositive of its statute of limitations defense and that it is entitled to these communications for two reasons. First, Walmart argues that Plaintiff has relied on these communications to support the alleged timeliness of his claim, putting those communications at issue and subjecting them to discovery on grounds of fairness. Further, Walmart claims that Plaintiff waived privilege by failing to provide a privilege log. Under either method of alleged waiver, in Walmart's view, it is entitled to all discovery directed at what Plaintiff knew and when he knew it about why Walmart did not hire him in June 2016, including communications about his application to Walmart in June 2016 and the related background check report. (ECF No. 56 at 14.) Alternatively, Walmart contends that, absent a finding of waiver, the Court minimally should order Plaintiff to produce a privilege log. The Court is not persuaded.

First, under the circumstances here, the Court finds that Plaintiff did not take an affirmative action that resulted in the assertion of the privilege. This is so despite Walmart's position that the existence and timing of Plaintiff's knowledge of why he was not hired "are central to this case's viability." (ECF No. 56 at.8.) The statute of limitations is an affirmative defense raised by Walmart, however, and it is Walmart's burden to prove Plaintiff's claim is time-barred. *See Sprint Commc'ns Co. L.P. v. Charter Commc'ns, Inc.,* -- F.R.D. --, No. 20-CV-

2161-JWB-TJJ, 2022 WL 594823, *3 (D. Kan. Feb. 28, 2022) (finding no affirmative act where plaintiff alleged in petition that it learned of its cause of action ten years after defendants' alleged actions through information that came from defendant and noting that such allegation "presumably was included … in accordance with Rule 11 to show that [Plaintiff] was filing its lawsuit in good faith and not obviously outside the statute of limitations.")

Further, Plaintiff did not otherwise put any communications with his counsel at issue. According to Plaintiff and his counsel, the facts underlying his current claim came to light during his counsel's deposition of a Walmart witness on March 15, 2019. The knowledge of this information is imputed to Plaintiff as of that date. *Daniel v. Cantrell*, 241 F. Supp. 2d 867, 873 (E.D. Tenn. 2003), *aff'd,* 375 F.3d 377 (6th Cir. 2004) (imputing attorney's knowledge to client for statute of limitations purposes and quoting *Veal v. Geraci,* 23 F.3d 722, 725 (2d Cir. 1994)) ("The relationship between an attorney and the client he or she represents in a lawsuit is one of agent and principal.")). Walmart, however, asserts that discovery is warranted because Plaintiff may have learned of the facts underlying his FCRA claim sooner than he now claims. (ECF No. 56 at 14.) While certainly the Court can conceive of scenarios under which such an assertion would have merit, that is not the situation here. Rather, in response to Walmart's discovery efforts, both Plaintiff and his counsel have confirmed by sworn declaration or testimony that, prior to March 15, 2019, neither had any knowledge of the code's existence or its omission from the report sent to Plaintiff in June 2016. Walmart's attempt to refute this evidence relies on a select portion of Plaintiff's deposition testimony which it interprets as demonstrating that Plaintiff knew why Walmart did not hire him no later than February 2017. (ECF No. 56 at 9-10 citing ECF No. 56-1 at 30:2-12; 36:5-9; 36:25-37:9.) This attempt is unavailing. The isolated testimony, taken out of context, stands in contrast to Plaintiff's more specific testimony that he

learned about the existence of the code, Walmart's use of the code and Walmart's failure to disclose the code after the disclosure in the *Gambles* litigation. (ECF No. 57-3 at 39:17-20; 55:3-9; 141:3-11; 151:2-22.) Walmart's argument also requires ignoring the distinction between the fact of Plaintiff's criminal conviction itself and his non-disclosure of that conviction. That distinction, which Plaintiff contends is central to his claim here, cannot be construed as one without a difference. Beyond this, Walmart provides no support for its argument that any communication between Plaintiff and counsel after March 15, 2019, would be relevant to its statute of limitations defense. In short, Walmart's position on this particular issue suggests that it wants access to Plaintiff's privileged documents "'solely as a means of checking [Plaintiff's] statements.'" *Sprint*, 2022 WL 594823, at *5 (quoting *Frontier Refining Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 702 (10th Cir. 1988)). "This is not a permissible reason for compelling the production of privileged or protected documents." *Id*.

Walmart also asserts that Plaintiff waived attorney-client privilege by his failure to produce a privilege log. According to Walmart, Plaintiff's objections based on relevance, overbreadth, or undue burden are untimely or, if not untimely, simply without merit. For his part, Plaintiff explains that he did not initially produce a privilege log because he concluded that no relevant privileged materials exist. According to Plaintiff, his conclusion was based on his view that only communications with counsel regarding the facts giving rise to his claim here, *i.e.,* the existence of, reliance on and non-disclosure of the code, are relevant. Plaintiff recounts that, once he came to understand that Walmart's discovery requests were not limited to his knowledge of the code, he supplemented his objections. In alternatively requesting that Plaintiff be ordered to produce a privilege log, Walmart requests that the Court confirm that Plaintiff "should not

9

limit the log to communications about the code; the log should include all responsive communications." (ECF No. 56 at 18.)

Central to a resolution of this issue is the appropriate scope of discovery. In Walmart's view, its discovery cannot be confined to only communications relating to Plaintiff's knowledge of the existence of the code, or its alleged reliance on, or alleged non-disclosure of, the code. Rather, as noted, Walmart contends that it is entitled to all discovery directed at what Plaintiff knew and when he knew it about why Walmart did not hire him in June 2016, including communications about his application to Walmart in June 2016 and the related background check report. Contrary to Walmart's position, the allegations of Plaintiff's claim do not support such broad-based discovery.

Walmart relies on the Court's framing of Plaintiff's injury for purposes of standing to support its view of the proper discovery scope. Specifically, Walmart cites the following language:

> [W]hile Mr. Merck does not allege that the actual report Walmart relied upon contains inaccurate information, he does allege that, had he been provided with the report actually relied upon, he would have been able to 'rectify the perceived deficiencies in his employment application" ([Am. Compl.] ¶ 48)—*i.e.*, he could have explained why true but negative information contained in the report was irrelevant to his fitness for the job. . .. When he was provided with a copy of a different report, <u>he was deprived of the information that could have allowed him to respond to Walmart's concerns</u>.

(ECF No. 56 at 7 citing Opinion and Order, ECF No. 37 at 12-13) (emphasis added by Walmart). Walmart's argument, however, once again focuses on isolated language read out of context. The introductory sentence of the paragraph, omitted by Walmart here, confirms that the "information that could have allowed [Plaintiff] to respond to Walmart's concerns," was alleged to be "a copy of the report that it actually relied upon before taking an adverse employment action against him." (ECF No. 37 at 12.) As discussed, the allegations of the First Amended Complaint are

10

that the report actually relied upon by Walmart contained the code, Walmart's decision not to hire Plaintiff was based on the code, and the code was not present on the report attached to the pre-adverse action notice that was sent to Plaintiff. (ECF No. 16 at ¶¶ 27-30.) Accordingly, the only communications relevant to Walmart's statute of limitations defense here would be pre-March 15, 2019, communications about the code or about the fact that the report Walmart relied upon was not the report sent to Plaintiff.

Applying this appropriate scope, Plaintiff's counsel has represented that no such pre-March 15, 2019 communications exist. This representation from Plaintiff's counsel is a sufficient basis on which both to reject any claim of waiver and to deny Walmart's request to compel the production of a privilege log. "Ordinarily, the representation of a party's attorney that no additional documents exist is sufficient to defeat a motion to compel absent credible evidence that the representation is inaccurate." *Brown v. Tellermate Holdings Ltd.,* No. 2:11-CV-1122, 2013 WL 1363738, at *6 (S.D. Ohio Apr. 3, 2013). Walmart has produced no such credible evidence. As noted, in the face of Plaintiff's testimony and his counsel's declaration on this issue, Walmart cites only isolated statements taken out of context. Accordingly, the Court will neither grant Walmart's Motion to Compel on the basis of waiver nor direct Plaintiff to produce a privilege log based on the record before it.

V.

For these reasons, Walmart's Motion to Compel (ECF No. 56) is **DENIED**. Walmart's request for oral argument also is **DENIED.**

    **IT IS SO ORDERED.**

Date: June 9, 2022            */s/ Elizabeth A. Preston Deavers*
                                               **ELIZABETH A. PRESTON DEAVERS**
                                               **UNITED STATES MAGISTRATE JUDGE**