## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| THOMAS MERCK, individually and as a representative of the class, | CASE NO. 2:20-cv-02908-SDM-EPD |
| **Plaintiff,** | JUDGE SARAH D. MORRISON |
| v. | |
| WALMART INC., | |
| **Defendant.** | |

## DEFENDANT WALMART INC.'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, Defendant Walmart Inc. ("Walmart") moves for summary judgment on Plaintiff Thomas Merck's ("Mr. Merck's") claim that Walmart violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(b)(3). As grounds for its Motion, Walmart states the undisputed material facts entitle it to judgment as a matter of law.

First, Mr. Merck lacks standing to maintain his FCRA claim.

██████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████

Third, Mr. Merck's FCRA claim is untimely, barred by the applicable statute of limitations.

Fourth, Mr. Merck has not adduced sufficient evidence from which a reasonable fact-finder could conclude Walmart "willfully" violated the FCRA.

For all these reasons, Mr. Merck's claim fails as a matter of law and fact, and Walmart is entitled to judgment in its favor.

Walmart requests oral argument in this matter because of the complexity of the legal issues presented.

WHEREFORE, for all the foregoing reasons as well as those contained in the accompanying Memorandum in Support, this Court should grant Walmart's Motion for Summary Judgment.

Dated: June 29, 2022

/s/ John Richards
John Richards
Terminus 200 Building
3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Tel: 678.553.2100
richardsjr@gtlaw.com

Naomi G. Beer, *pro hac vice*
Greenberg Traurig, LLP
1144 15th Street, Suite 3300
Denver, Colorado 80202
Tel: 303.572.6549
beern@gtlaw.com

James N. Boudreau, *pro hac vice*
boudreauj@gtlaw.com
Christiana L. Signs, *pro hac vice*
signsc@gtlaw.com
Greenberg Traurig, LLP
1717 Arch Street, Suite 400
Philadelphia, PA 19103
Telephone: 215-988-7800

*Attorneys for Defendant Walmart Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **THOMAS MERCK, individually and as a representative of the class,** | **CASE NO. 2:20-cv-02908-SDM-EPD** |
| **Plaintiff,** | **JUDGE SARAH D. MORRISON** |
| **v.** | |
| **WALMART INC.,** | |
| **Defendant.** | |

## MEMORANDUM IN SUPPORT OF DEFENDANT
## WALMART INC.'S MOTION FOR SUMMARY JUDGMENT

John Richards
Terminus 200 Building
3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Tel:     678.553.2100
richardsjr@gtlaw.com

Naomi G. Beer, *pro hac vice*
Greenberg Traurig, LLP
1144 15th Street, Suite 3300
Denver, Colorado 80202
Tel: 303.572.6549
beern@gtlaw.com

James N. Boudreau, *pro hac vice*
boudreauj@gtlaw.com
Christiana L. Signs, *pro hac vice*
signsc@gtlaw.com
Greenberg Traurig, LLP
1717 Arch Street, Suite 400
Philadelphia, PA 19103
Telephone: 215-988-7800

*Attorneys for Defendant Walmart, Inc.*

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   UNDISPUTED MATERIAL FACTS ................................................................. 3

   A.   MR. MERCK APPLIES FOR EMPLOYMENT WITH WALMART AND
       AUTHORIZES A BACKGROUND CHECK. .................................................... 3

   B.   STERLING'S BACKGROUND CHECK OF MR. MERCK FOR WALMART. ............. 3

   C.   STERLING, ACTING AS WALMART'S AGENT, SENDS MR. MERCK
       PRE-ADVERSE AND ADVERSE ACTION NOTICES. .................................... 5

   D.   MR. MERCK DISCLOSES HIS CONVICTION THE NEXT TIME HE HAS
       AN OPPORTUNITY TO DO SO. ...................................................................... 6

   E.   MR. MERCK SUES STERLING UNDER THE FCRA AND SETTLES THAT
       LAWSUIT. ........................................................................................................ 7

   F.   MR. MERCK'S LAWSUIT AGAINST WALMART. .......................................... 8

III.  WALMART IS ENTITLED TO DISMISSAL OR JUDGMENT IN ITS FAVOR ........... 8

   A.   THE COURT SHOULD DISMISS MR. MERCK'S COMPLAINT BECAUSE
       HE CANNOT PROVE STANDING. ................................................................. 8

   B.   MR. MERCK WAIVED AND RELEASED HIS FCRA CLAIM. ................................ 13

           ███ ████████████████████████████████ ............................... 13

       2.   Mr. Merck's Release of Sterling Extends to Walmart via the Doctrine of
           *Respondeat Superior.* .................................................................................. 15

   C.   MR. MERCK'S CLAIM IS TIME-BARRED. ...................................................... 16

   D.   MR. MERCK CANNOT PROVE WILLFULNESS. ............................................ 18

IV.  CONCLUSION ................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Alibris v. ADT LLC*,
   No. 9:14-CV-81616,
   2015 WL 5084231 (S.D. Fla. Aug. 28, 2015) ......................................................... 18

*Bamerilease Cap. Corp. v. Nearburg*,
   958 F.2d 150 (6th Cir. 1992) ................................................................................. 13

*Berry v. Schulman*,
   807 F.3d 600 (4th Cir. 2015) ................................................................................. 19

*Campbell v. Grand Trunk W. R.R. Co.*,
   238 F.3d 772 (6th Cir. 2001) ................................................................................. 17

*DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*,
   448 F.3d 918 (6th Cir. 2006) ................................................................................. 13

*Davis v. Universal Prot. Servs., LLC*,
   558 F. Supp. 3d 220 (E.D. Pa. 2021) ................................................................ 2, 12

*Delta Tank Mfg. Co. v. Weatherhead Co.*,
   150 F. Supp. 525 (N.D. Ohio 1957) ....................................................................... 16

*DiCenzi v. Rose*,
   452 F.3d 465 (6th Cir. 2006) ................................................................................. 17

*Enter. Grp. Planning v. Falba*,
   No. 94-3827, 73 F.3d 361,
   1995 U.S. App. LEXIS 38844 (6th Cir. Dec. 27, 1995) ......................................... 13

*Erie Boulevard Hydropower, L.P. v. State*,
   978 N.Y.S.2d 436 (N.Y. App. Div. 2014) .............................................................. 14

*Gambles v. Sterling Infosystems, Inc.*,
   No. 1:15-cv-09746 (S.D.N.Y.) .................................................................................. 7

*Hatten v. Experian Info. Sols., Inc.*,
   No. 12-12236, 2013 WL 5179190 (E.D. Mich. Sept. 12, 2013) ............................. 20

*Huff v. TeleCheck Servs.*,
   923 F.3d 458 (6th Cir. 2019) ................................................................................. 12

*Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.*,
   225 F. Supp. 3d 670 (S.D. Ohio 2016) .................................................................. 14

*Kinsey v. Spencer Son Corp.*,
    300 N.Y.S. 391 (N.Y. Sup. Ct. 1937) ................................................................. 16

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................. 9

*McIntyre v. RentGrow, Inc.*,
    34 F.4th 87 (1st Cir. 2022) ............................................................................... 19

*Med. Mut. v. DeSoto*,
    245 F.3d 561 (6th Cir. 2001) ............................................................................ 13

*Merck & Co. v. Reynolds*,
    559 U.S. 633 (2010) ........................................................................................... 17

*Merck v. Sterling Infosystems-Ohio, Inc.*,
    No. 1:16-cv-02415-SO (N.D. Ohio) ..................................................................... 7

*Mickowski v. Visi-Trak Worldwide, LLC*,
    321 F. Supp. 2d 885 (N.D. Ohio 2004) .............................................................. 16

*Moore v. Rite-Aid Hdqtrs Corp.*,
    No. CV 13-1515,
    2017 WL 6525796 (E.D. Pa. Dec. 21, 2017). ......................................... 2, 15, 16

*Munson v. United States*,
    380 F.2d 976 (6th Cir. 1967) ............................................................................ 16

*Murray v. Indymac Bank, F.S.B.*,
    No. 04 C 7669, 2007 WL 2741650
    (N.D. Ill. Sept. 13, 2007) .................................................................................. 20

*Newlin v. Comcast Cable of Ind., Inc.*,
    No. 2:12-CV-430-TLS,
    2015 WL 363426 (N.D. Ind. Jan. 27, 2015) ...................................................... 20

*Rocheleau v. Elder Living Const. LLC*,
    No. 13-CV-14842, 2015 WL 1867331 (E.D. Mich. Apr. 23, 2015),
    *aff'd*, 814 F.3d 398 (6th Cir. 2016) ........................................................... 17, 18

*Safeco Ins. Co. of Am. v. Burr*,
    551 U.S. 47 (2007) ....................................................................................... 18, 19

*Sault Ste. Marie Tribe of Chippewa Indians v. United States*,
    288 F.3d 910 (6th Cir. 2002) .............................................................................. 9

*Schumacher v. SC Data Ctr., Inc.*,
    33 F.4th 504 (8th Cir. 2022) ................................................................ 2, 10, 11, 12

*Smith v. LexisNexis Screening Sols., Inc.*,
  837 F.3d 604 (6th Cir. 2016) ............................................................ 20

*Spokeo, Inc. v. Robins,*
  578 U.S. 330 (2016) ........................................................................ 12

*Tocci v. Antioch Univ.,*
  967 F. Supp. 2d 1176 (S.D. Ohio 2013) .......................................... 13

*TransUnion LLC v. Ramirez,*
  594 U.S. ---, 141 S. Ct. 2190 (2021) ............................................ 8, 9

*Ward v. National Patient Account Services Solutions, Inc.,*
  9 F.4th 357 (6th Cir. 2021) ................................................................ 9

*Wochna v. Mancino,*
  No. 07CA0059-M, 2008 WL 623731 (Ohio Ct. App. Mar. 10, 2008) ................ 14

**Other Authorities**

15 U.S.C. § 1681 ............................................................................ 17, 19

Fair Credit Reporting Act,
  15 U.S.C. § 1681 .............................................................................. 1

**Rules**

Fed. R. Civ. P. 56 .............................................................................. 19

## I.    INTRODUCTION

This case concerns a single count under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(b)(3). In May 2016, after receiving a conditional job offer from Walmart, Plaintiff Thomas Merck ("Mr. Merck") failed to disclose a criminal theft conviction that Walmart eventually learned of through a pre-employment background check. Despite his admitted failure to disclose, Mr. Merck argues Walmart violated the FCRA when it provided him with a background report that was allegedly different than the one it relied on in deciding not to hire him. Specifically, Mr. Merck claims the background report Walmart used contained a two-digit notation "R3" (meaning he failed to disclose a prior criminal conviction that appeared in his background report), whereas the background report he received contained no R3 reference. But even if this is true, the undisputed record facts demonstrate Walmart is entitled to judgment in its favor on multiple separate and independent grounds.

As an initial matter, Mr. Merck cannot prove he had Article III standing. Not receiving a copy of a background report referencing R3 is, at most, a mere procedural violation which by itself does not establish standing. It does not present a harm traditionally cognizable at common law. It is also undisputed that this alleged injury (*i.e.*, the omission of R3) did not cause him any tangible injury-in-fact. He insists if he had received the same background report Walmart did, *i.e.*, one with "R3," he would have called Walmart's background check vendor (Sterling Infosystems, Inc. ("Sterling")) or Walmart to ask what R3 meant, Sterling or Walmart would have told him what it meant (that he failed to disclose a conviction identified in his background report), and he would have then either explained his non-disclosure or re-applied and been hired. (Am. Compl., ECF No. 16, ¶¶ 34-49.) At deposition, however, Mr. Merck testified he *did* call Sterling or Walmart (he cannot remember which) and he *did* re-apply (twice) unsuccessfully. ███████████████

███████████████████████████████████████████████████████████

1

████████████████████████████████████████████████████████████

██████████████████████████████████ This is fatal to his Article III standing, as recent

published legal authority confirms. *See Schumacher v. SC Data Ctr., Inc.*, 33 F.4th 504, 511–12

(8th Cir. 2022) (stating unsuccessful job applicants cannot establish standing under FCRA where,

as here, the prospective employer, at most, failed to provide negative but *accurate* information

before rescinding conditional job offer); *Davis v. Universal Prot. Servs., LLC*, 558 F. Supp. 3d

220, 228 (E.D. Pa. 2021) (no standing to pursue claim where undisclosed conviction was itself bar

to employment).

Apart from a lack of standing, Mr. Merck's claim fails for other threshold reasons as well.

████████████████████████████████████████████████████████████

████████ Specifically, in August 2016, Mr. Merck sued Sterling based on the same background

report at issue here and then settled that suit █████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████ It is undisputed that Walmart is Sterling's

principal (Am. Compl., ECF No. 16, ¶¶ 21, 26.); ████████████████████████████████████

███████████████████████████████████████████████ settlement with an

agent extinguishes a claim against the principal for the same conduct under *respondeat superior*.

*Moore v. Rite-Aid Hdqtrs Corp.*, No. CV 13-1515, 2017 WL 6525796 (E.D. Pa. Dec. 21, 2017).

Second, the FCRA's two-year statute of limitations bars Mr. Merck's claim. Undisputed

record facts show Mr. Merck filed this case more than two years after he learned Walmart

rescinded his conditional job offer because he failed to disclose his prior criminal conviction.

Finally, based on the undisputed evidence, no reasonable fact-finder could conclude Walmart "willfully" violated the FCRA. Such is fatal to the FCRA claim because Mr. Merck seeks only statutory damages.

For all these reasons, the Court should grant Walmart's Motion and issue an order dismissing this case in its entirety because Mr. Merck lacks standing, or, in the alternative, entering summary judgment in Walmart's favor.

## II.    UNDISPUTED MATERIAL FACTS[1]

### A.  MR. MERCK APPLIES FOR EMPLOYMENT WITH WALMART AND AUTHORIZES A BACKGROUND CHECK.

On April 23, 2016, Mr. Merck applied for work at Walmart. (Merck Dep. 78:16-20, ECF No. 74-1.) After receiving a conditional job offer, Walmart requested his written authorization to obtain a background report on him for "employment purposes." (Bartlett Dep. 54:12-55:24, ECF No. 67-2.) At that time, Walmart also asked Mr. Merck whether he had ever been convicted of a crime. (Merck Dep. 78:21-79:21, 87:18-88:22, ECF No. 74-1; Bartlett Dep. 54:12-55:24, ECF 67-2.) Even though Mr. Merck was convicted of theft in 2001, he answered "no." (Merck Dep. 87:18-88:22, ECF No. 74-1.)

### B.  STERLING'S BACKGROUND CHECK OF MR. MERCK FOR WALMART.

After Mr. Merck provided his written authorization, Walmart requested a background report on him from one of its background check vendors, Sterling. (Bartlett Dep. 56:1-57:13, ECF

---

[1] Where evidence cited in support of this Motion is already in the case record through other pleadings the Motion cites to the ECF No. for the already filed document. Some of that evidence, as well as an additional exhibit submitted with this Motion, is confidential. With respect to evidence previously submitted in connection with class certification briefing, pursuant to the Court's June 16, 2022 Order (ECF No. 72), the Parties will file any motions to seal by August 1, 2022.  Walmart further anticipates that Plaintiff will move to seal the additional exhibit submitted with this Motion. Walmart has filed a redacted copy of this motion, filed a placeholder in lieu of the confidential exhibit and served an unredacted copies on Plaintiff.

No. 67-2.)



Such candidates could reapply after 60 days, and if they then received a conditional job offer,

---

[2] "Do Not Consider" offenses are listed in Exhibits C and D to the Bartlett May 28, 2021 Decl. (Bartlett May 28, 2021, Decl., ECF No. 67-2 (Bartlett Dep. Ex. 7), pp. 95, 113.)

Walmart would request a new background check. If the candidate then disclosed the previously undisclosed conviction, Walmart would consider the candidate for hire, provided the conviction was not disqualifying. (*Id.* 71:3-73:5, 45:11-25.)



Sterling performed a background check on Mr. Merck which identified a 2001 misdemeanor theft conviction that Mr. Merck did not disclose. (Bartlett Dep. 56:1-58:3, ECF No. 67-2; Bartlett May 28, 2021, Decl. ¶ 8, ECF No. 67-2 (Bartlett Dep. Ex. 7), p. 70.)

There is no dispute that the conviction found was accurate. (Merck Dep. 137:19-25, ECF No. 74-1.)

### C.  STERLING, ACTING AS WALMART'S AGENT, SENDS MR. MERCK PRE-ADVERSE AND ADVERSE ACTION NOTICES.

On June 6, 2016, Sterling—acting as Walmart's agent—sent Mr. Merck a pre-adverse action letter. (Am. Compl., ECF No. 16, ¶ 21 (describing relationship as one where "Sterling offers to act as the employer's agent in fulfilling the employer's obligation to provide pre-adverse action notice as required by the FCRA"), ¶ 26 (". . . Walmart, through its agent Sterling, sent Plaintiff. . .); *id.* Ex. 1; Bartlett Dep. 62:6-12, ECF 67-2; Bartlett May 28, 2021, Decl. Ex. A, ECF No. 67-2 (Bartlett Dep. Ex. 7), p. 73.) The letter notified Mr. Merck that the background report Walmart had requested in connection with his employment application contained "public record information . . . likely to have an adverse effect on [Mr. Merck's] ability to obtain employment with Wal-Mart." (Merck Dep. Ex. 3 (Pre-Adverse Action Letter), ECF No. 67-10, at Merck_000010.) The letter enclosed a "Summary of Your Rights Under the Fair Credit Reporting Act" and a copy of

the background report that Walmart requested. (*Id.* at Merck_000011-19.) The report identified the theft conviction which Mr. Merck did not disclose to Walmart. (*Id.* at Merck_000017.)

Mr. Merck understood from the pre-adverse action letter that Walmart would not hire him due to something in his background report. (Merck Dep. 97:17-21, ECF No. 74-1.) Based on his review of the report, he believed Walmart chose to rescind his conditional offer either because of a "high risk" indicator in the address history section of the report, or because he did not disclose his 2001 misdemeanor conviction. (*Id.* 124:16-125:19 ("I figured it had to be one of those two.").) As a result, he called Sterling or Walmart (he cannot remember which) to try "to find a way that was possible to explain myself as to why it wasn't disclosed if it was the misdemeanor, like a second interview or a chance to sit down and explain my side as to like, you know, why I didn't disclose it." (*Id.* 110:12-23.) He claims he asked the person whom he telephoned exactly what in the background report prevented Walmart from hiring him, *i.e.*, "what was the holdup?" (*Id.* 98:19-99:8, 110:24-111:15.) He further claims the person with whom he spoke confirmed Walmart was not hiring him based on information in the background report but would not tell him precisely what in the report caused Walmart to rescind his conditional offer. (*Id.* 112:5-9, 112:20-113:18.)

On June 14, 2016, Sterling, again acting as Walmart's agent, sent Mr. Merck an adverse action notice stating Walmart was not hiring him at the present time due to information in his background report. (Merck Dep. Ex. 4 (Adverse Action Notice), ECF No. 67-9.)

### D. MR. MERCK DISCLOSES HIS CONVICTION THE NEXT TIME HE HAS AN OPPORTUNITY TO DO SO.

Undeterred, in August 2016 and November 2016, Mr. Merck re-applied to Walmart. (Merck Dep. 118:15-119:19, ECF No. 74-1.) He had no expectation as to whether Walmart would hire him, but "just figured [he would] keep trying, just be persistent." (*Id.* at 121:19-122:2.) Notably, because Walmart asks about criminal history only after making a conditional offer, Mr.

Merck did not have another opportunity to disclose his previously undisclosed conviction. (*Id.* at 119:12-6; Bartlett Dep. 103:13-20, ECF 67-2.) He did not receive a conditional offer of employment either time. (Merck Dep. 119:12-6, ECF No. 74-1.)

In early 2017, however, Mr. Merck had an opportunity to disclose when he applied to his current employer, Residential Home for the Developmentally Disabled, Inc. ("RHDD"). (Merck Dep. 31:12-16, ECF No. 74-1.) Someone from RHDD asked Mr. Merck if there was anything in his criminal history Mr. Merck wanted to disclose, as the company intended to run a background check on him. (*Id.* 29:25-31:8.) In response, Mr. Merck disclosed his 2001 misdemeanor conviction. (*Id.* 30:23-25.) Mr. Merck did so because he understood at that time his failure to disclose his conviction to Walmart was what caused Walmart not to hire him. (*Id.* 36:25-37:9.)

### E. MR. MERCK SUES STERLING UNDER THE FCRA AND SETTLES THAT LAWSUIT.

On August 31, 2016, Mr. Merck sued Sterling alleging Sterling violated the FCRA by reporting adverse information about him to Walmart that was older than seven years. (*See Merck v. Sterling Infosystems-Ohio, Inc.*, No. 1:16-cv-02415-SO (N.D. Ohio), Notice of Removal, ECF 1.) Specifically, Mr. Merck claimed his background report included a "high risk" indicator based on an address at which Mr. Merck had not been "seen" for over seven years. (*Id.*)[3]

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

---

[3] Mr. Merck initially filed his Class Action Complaint in State Court in Ohio. Sterling removed the action and the parties jointly moved to transfer it to the Southern District of New York and consolidate with an already-pending class action, *Gambles v. Sterling Infosystems, Inc.*, No. 1:15-cv-09746 (S.D.N.Y.). (Ex. 1, Settlement Agreement at Merck_000104). The consolidated cases proceeded in New York until Mr. Merck opted-out of the *Gambles* case and settled his claim individually. The *Gambles* case then settled on a class-wide basis. (████████████████████



**F. MR. MERCK'S LAWSUIT AGAINST WALMART.**

On June 3, 2020, two months after signing the settlement agreement with Sterling ██

███████████████████████████████████████████████████████████████████████

██████████████ Mr. Merck filed this action against Walmart (Sterling's principal) regarding

the same background check. (Am. Compl., ECF No. 16, ¶¶ 21, 26; Bartlett May 28, 2021, Decl.

Ex. A, ECF No. 67-2 (Bartlett Dep. Ex. 7), p. 71, Paragraph 1(f), (g).)

**III.   WALMART IS ENTITLED TO DISMISSAL OR JUDGMENT IN ITS FAVOR**

**A.   THE COURT SHOULD DISMISS MR. MERCK'S COMPLAINT BECAUSE HE CANNOT PROVE STANDING.**

It is axiomatic that to proceed in federal court a plaintiff must establish Article III standing.

*TransUnion LLC v. Ramirez*, 594 U.S. ---, 141 S. Ct. 2190, 2203 (2021). To prove standing, a

plaintiff must show: (i) he "suffered an injury in fact that is concrete, particularized, and actual or

imminent;" (ii) the defendant caused the injury; and (iii) judicial relief will redress it. *Id.*

Importantly, a plaintiff must support each element of standing with the same "manner and degree of evidence" necessary to support the rest of his case at each stage of litigation. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Thus, in response to a motion for summary judgment, a plaintiff can no longer rest on "'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts'" that prove each element of standing. *Id;. see also, e.g.*, *Sault Ste. Marie Tribe of Chippewa Indians v. United States*, 288 F.3d 910, 916 (6th Cir. 2002) (explaining at summary judgment stage, plaintiffs must show—not merely allege—facts giving rise to standing). Mr. Merck cannot meet his burden here.

As explained in detail in Walmart's Opposition to Plaintiff's Motion for Class Certification at pp. 10-22 (ECF No. 74), case law decided after this Court's Order on Walmart's Motion to Dismiss (ECF No. 37) provides further context to the standing analysis. In particular, the U.S. Supreme Court's opinion in *TransUnion* and the Sixth Circuit's opinion applying *TransUnion* in *Ward v. National Patient Account Services Solutions, Inc.*, 9 F.4th 357 (6th Cir. 2021), make plain that a bare procedural violation of the FCRA will not confer standing unless it correlates with a traditional harm recognized at common law or causes an actual injury. *Ward v. Nat'l Patient Acct. Servs. Sols., Inc.*, 9 F.4th 357 (6th Cir. 2021). As explained in *Ward,* standing is a two-part inquiry. *Ward,* 9 F.4th at 362-63. First, the Court must assess whether the alleged FCRA violation resembles a traditional harm, meaning one that existed at common law. *See TransUnion*, 141 S. Ct. at 2204; *Ward*, 9 F.4th at 362. Because the alleged violation here–omission of R3–does not resemble a traditional harm at common law,[4] the Court must move to the second prong and consider whether a "concrete injury" in fact flows from the alleged violation. *Ward*, 9 F.4th at 363.

---

[4] This Court intuitively recognized this limitation at the motion to dismiss stage because it did not describe Mr. Merck's injury as a bare procedural violation. (Order 12-13, ECF No. 37.)

Turning to the second prong of the standing inquiry, Mr. Merck argues the lack of R3 prevented him from obtaining employment and that this harm flows directly from the FCRA. He reasons had he received the R3, he would have called Walmart or Sterling, learned what it meant and either explained the non-disclosure or reapplied and disclosed his conviction. (*Id.*; FAC, ECF 16, ¶¶ 48-49.) As the record demonstrates, however, Mr. Merck *did* try to explain and *did* re-apply, and neither resulted in his employment. (*Supra* at Part II.C.) He testified he called someone— either at Sterling or Walmart—and pressed them to explain what exactly within the report was the problem. (*Id.*) He called because he wanted to try "to find a way that was possible to explain myself as to why it wasn't disclosed if it was the misdemeanor, like a second interview or a chance to sit down and explain my side as to like, you know, why I didn't disclose it." (Merck Dep. 110:12-23, ECF No. 74-1.) Although he now claims the person with whom he spoke would not identify what precisely in his background report caused the problem, Mr. Merck testified he knew it was either because of "high risk" indicator in address history section *or because he did not disclose his 2001 misdemeanor conviction*. (*Id.* at 124:16-125:19; *see also id.* at 113:2-8, 123:1-125:19.)

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████     It is undisputed the report accurately identified the conviction he failed to disclose, and this non-disclosure barred his Walmart employment at that time.

The Eighth Circuit's recent opinion in *Schumacher* (also a FCRA pre-adverse action notice case) is factually analogous and on point. *Schumacher,* 33 F.4th 504. There the background report revealed an undisclosed conviction. *Id.* at 508. The prospective employer withdrew the conditional

offer stating a letter would follow but did not send the letter or background report to plaintiff. *Id.* After first finding the failure to provide the background report before taking adverse action violated the FCRA, the Eighth Circuit explained that pre-adverse action notice cases in which courts have found standing in the past have been "premised on a prospective employee's right to discuss with an employer the information in the consumer report prior to the employer taking an adverse action." *Id.* at 511. But, neither the FCRA's text nor its legislative history support the proposition that a prospective employee has a right "to not only receive a copy of her consumer report, but also discuss directly with the employer accurate but negative information within the report prior to the employer taking adverse action." *Id.* at 511–12. The Court stated:

> [T]he right to pre-action explanation to the employer is not unambiguously stated in the text of [FCRA]. To find such a right, we would have to infer that Congress, by requiring an employer to provide a prospective employee a copy of the consumer report before the employer takes an adverse action, also intended to afford an opportunity for job candidates or employees to explain to the employer any information, both accurate and inaccurate, contained in the report.

*Id.* at 511; *see also id.* ("The legislative history does not evince a right afforded to an employee or prospective employee to provide context as to negative information in a consumer report nor otherwise discuss directly with the employer accurate information in the report.").

Thus, where: (a) an employer took an adverse action based on a background report that revealed undisclosed convictions, (b) "wrote on the report the reason for the job offer withdrawal—the undisclosed felony convictions," and (c) plaintiff did not receive a copy of the report until *after* the defendant had acted – the plaintiff *nonetheless lacked standing* because she admitted the background report's accuracy.[5] *Id.* at 511-12. In the Eighth Circuit's words, the

---

[5] That in *Schumacher* the report included an explanation why the plaintiff was not hired is of no moment because the plaintiff did not see the report–and thus did not receive this information – until after the employer had taken final adverse action. *See Schumacher*, 33 F.4th at 510.

plaintiff "may have demonstrated an injury in law, but not an injury in fact." *Id.* at 512. In sum, because the plaintiff's alleged harm was his inability to explain why he did not disclose the prior conviction to his prospective employer, and because this is not a harm Congress intended to prevent, the plaintiff lacked standing. *Id.*

The recent decision in *Davis v. Universal Protection Services, LLC*, 558 F. Supp. 3d 220, 228 (E.D. Pa. 2021) is similarly instructive. There, a plaintiff applied for a job and her background check revealed criminal convictions that rendered her ineligible for employment, but the prospective employer did not provide the background report to the plaintiff before taking adverse action. *Id.* at 223-24. The court held the plaintiff lacked standing to pursue her pre-adverse action notice claim because she suffered no concrete harm caused by the defendant's failure to give her a copy of her background report. *Id.* at 228. "Even if Plaintiff *had* received a copy of her consumer report, it would have done her no good, because, crucially, she admits that she has a criminal record and that she was ineligible for employment." *Id.* (emphasis in original).

In sum, just like the plaintiff in *Schumacher*, Mr. Merck did not get the job at Walmart because he failed to disclose a theft conviction that was accurately reported to his prospective employer. (*See* Merck Dep. 137:19-25, ECF No. 74-1.) Just as in *Schumacher*, therefore, no concrete harm resulted from the failure to provide the R3 designation, and Mr. Merck lacks standing to pursue his claim.[6] ███████████████████████████████

---

[6] Although *Schumacher* is in the Eighth Circuit, it is consistent with the Sixth Circuit's understanding of Congress's intent in enacting the FCRA. *See Huff v. TeleCheck Servs.*, 923 F.3d 458, 468 (6th Cir. 2019) ("[FCRA] allows consumers to look into and correct information in their files, it does not provide a shield from imminent economic harm in the way the [FDCPA] does. [FCRA's] main target is the dissemination of inaccurate and harmful information, just as in *Spokeo*." (citations omitted)). *Huff* does not describe the FCRA's purpose as providing consumers with the right to know about accurate but negative information. It follows that the Sixth Circuit would agree that the FCRA's purpose is not to allow a prospective employee to explain accurate, negative information to obtain employment.

12



Mr. Merck thus cannot prove standing, and the Court should dismiss this case.

## B.  MR. MERCK WAIVED AND RELEASED HIS FCRA CLAIM.

The FAC in this case alleges (and in fact, Mr. Merck bases his entire claim on the premise) that Walmart is a Sterling principal (ECF No. 16, ¶¶ 21, 26). What is more, ███████████████████████ applicable common law extends Mr. Merck's release of Sterling to Walmart. ████████████████████████████

Settlement agreements are a type of contract, and state contract law governs their interpretation. *Tocci v. Antioch Univ.,* 967 F. Supp. 2d 1176, 1191 (S.D. Ohio 2013); *see also Bamerilease Cap. Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992). The Settlement Agreement does not contain a choice of law provision. A federal court with federal question subject matter jurisdiction applied federal common law in determining choice of law questions. *See Med. Mut. v. DeSoto*, 245 F.3d 561, 570 (6th Cir. 2001); *Enter. Grp. Planning v. Falba*, No. 94-3827, 73 F.3d 361 (Table), 1995 U.S. App. LEXIS 38844, at *5-6 (6th Cir. Dec. 27, 1995). Federal common law has adopted the Restatement Second's Most Significant Relationship test in the absence of a choice of law clause. *DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 922 (6th Cir. 2006). Here, the states most likely to have a significant relationship Ohio (where Merck is domiciled, and where he entered into the contract), and New York (the case at issue was filed in the SDNY). Under both New York and Ohio law, the outcome is the same.

Under New York and Ohio law, courts give effect to the plain meaning of the terms of a contract. *See Wochna v. Mancino*, No. 07CA0059-M, 2008 WL 623731, at ¶ 13 (Ohio Ct. App. Mar. 10, 2008) ("Because a settlement agreement is a contract, we are bound to give effect to the plain meaning of the terms used by the parties."); *Erie Boulevard Hydropower, L.P. v. State*, 978 N.Y.S.2d 436, 437 (N.Y. App. Div. 2014) (clarifying settlement agreement is contract court must enforce according to plain meaning of its terms).



Here, it is undisputed Walmart was a principal of Sterling. First, Mr. Merck admits that Sterling offers services that include "to act as the employer's agent in fulfilling the employer's obligation to provide pre-adverse action notice as required by the FCRA" (Am. Compl. ¶ 21, ECF No. 16), and that "[o]n June 6, 2016, Walmart, *through its agent Sterling*, sent" the pre-adverse action notice at issue (*id.* ¶ 26 (emphasis added)). These are binding judicial admissions. *Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.*, 225 F. Supp. 3d 670, 677 (S.D. Ohio 2016) (stating factual assertions in pleadings are judicial admissions).



2. **Mr. Merck's Release of Sterling Extends to Walmart via the Doctrine of *Respondeat Superior*.**

the doctrine of *respondeat superior* releases Walmart as a matter of law. *Moore v. Rite-Aid Hdqtrs Corp.*, No. CV 13-1515, 2017 WL 6525796 (E.D. Pa. Dec. 21, 2017), is directly on point. In *Moore*, the plaintiff applied for a job at Rite-Aid. Pursuant to a contract between Rite-Aid and LexisNexis, LexisNexis obtained a background report on the plaintiff, adjudicated the plaintiff as "ineligible" for hire, and then, on Rite-Aid's behalf, mailed a "Pre-Adverse Action Notice" to the plaintiff on Rite-Aid stationary. Plaintiff then sued Rite-Aid and LexisNexis, alleging Rite-Aid violated the FCRA in its use of LexisNexis's background check services. *Id.* at *1. Rite-Aid moved to dismiss the claims against it, and while that motion was pending, LexisNexis and the plaintiff entered into a settlement which released plaintiff's claims, known or unknown, against LexisNexis and purported to reserve all rights plaintiff had against Rite-Aid. *Id.* at *3.

After the plaintiff continued to pursue her claims against Rite-Aid, Rite-Aid moved to dismiss based on the LexisNexis settlement agreement, arguing Rite-Aid was LexisNexis's principal as a matter of common law. *Id.* at *3-4. The court agreed. It explained, "plaintiff alleges that 'LexisNexis was acting on behalf of Rite-Aid, as its agent and/or representative.' Plaintiff is bound by these allegations." *Id.* at *12 (internal citation omitted). It then applied Pennsylvania

common law, which holds "the release of an agent also releases the principal for any claims of vicarious liability." *Id.* And significantly, even though the plaintiff had attempted to reserve her rights against Rite-Aid expressly, the court found those efforts were "to no effect."[7] *Id.* at *13. The plaintiff released Rite-Aid, intentionally or not. *Id.* at *12-13.

Ohio and New York common law is in accord with Pennsylvania. Where an injured party enters into a settlement with the primary wrongdoer, the settlement bars recovery against the party secondarily liable where liability hinges on *respondeat superior*. *See Munson v. United States*, 380 F.2d 976, 978 (6th Cir. 1967); *Delta Tank Mfg. Co. v. Weatherhead Co.*, 150 F. Supp. 525, 528 (N.D. Ohio 1957); *Mickowski v. Visi-Trak Worldwide, LLC,* 321 F. Supp. 2d 885, 897 (N.D. Ohio 2004); *Kinsey v. Spencer Son Corp.*, 300 N.Y.S. 391, 395-96 (N.Y. Sup. Ct. 1937).

Thus, Mr. Merck's ███████ release of Sterling extends to release Walmart both expressly and as a matter of common law from the claims he makes in this action. *Moore*, 2017 WL 6525796, at *12-13. Walmart is entitled to judgment in its favor.

### C. MR. MERCK'S CLAIM IS TIME-BARRED.

Mr. Merck's FCRA claim fails for another reason as well: the FCRA's two-year statute of limitations bars it. The FCRA provides:

> An action to enforce any liability created under this subchapter may be brought . . . not later than the earlier of--(1) *2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability*; or (2) 5 years after the date on which the violation that is the basis for such liability occurs.

15 U.S.C. § 1681p (emphasis added). When the word "discovery" is written directly into a statute like this, "courts have typically interpreted the word to refer not only to actual discovery, but also to the hypothetical discovery of facts a reasonably diligent plaintiff would know." *Merck & Co. v.*

---

[7] ████████████████████████████████████████
████████████████ Even if it had one, however, it would be of no effect.

*Reynolds*, 559 U.S. 633, 633–34 (2010). The FCRA's two-year statute of limitations thus begins to run on the date a reasonably diligent plaintiff would have discovered the facts that give rise to his claim. *Id.*; *see also Rocheleau v. Elder Living Const., LLC*, 814 F.3d 398, 401 (6th Cir. 2016) (explaining it is discovery of facts, as opposed to discovery those facts constitute violation, that matters for purposes of FCRA's statute of limitations).

In the Sixth Circuit, "[b]ecause the statute of limitations is an affirmative defense, the burden is on the defendant to show that the statute of limitations has run, *and if the defendant meets this requirement then the burden shifts to the plaintiff to establish an exception to the statute of limitations*." *Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001)) (applying federal common law) (emphasis added). The discovery rule is one such exception, and the plaintiff "bears the burden of proving that he exercised due diligence, in order for the statute of limitations to begin running from the date he discovered the factual predicate of his claim[.]" *DiCenzi v. Rose*, 452 F.3d 465, 471 (6th Cir. 2006) (applying federal common law in which discovery rule is included in federal statute of limitations).

Here, Mr. Merck admits, as he must, he did not file his FCRA claim within two years of the alleged violation. He instead seeks to use the statute's discovery rule to save it from dismissal. (Am. Compl., ECF No. 16, ¶ 47.) His invocation of the discovery rule is unavailing. Based on the undisputed record facts, he knew (or at the bare minimum, should have known) the facts giving rise to his claim more than two years before he filed this lawsuit. Indeed, he testified he knew in 2016 that Walmart decided not to hire him because he had failed to disclose his theft conviction. (Merck Dep. 123:23-125:19, ECF No. 74-1.) As proof of his knowledge, it is undisputed Mr. Merck disclosed his criminal history when he applied for a job at RHDD in early 2017. (*Id.* at 36:25-37:9.) Whether Mr. Merck received and/or had express knowledge of R3 does not matter.

17

His own testimony and subsequent course of action demonstrate he knew in 2016 (and certainly at the latest by early 2017 (*see id.*), still more than two years before he filed this lawsuit) that his non-disclosure was the problem. The two-year statute of limitations bars his claim.

Regardless, what gives rise to Mr. Merck's claim for limitations purposes is the fact that Walmart decided not to hire him, as communicated to him in June 2016. In *Alibris v. ADT LLC*, No. 9:14-CV-81616, 2015 WL 5084231, at *9–10 (S.D. Fla. Aug. 28, 2015), the court considered a pre-adverse action notice claim like the one Mr. Merck asserts. It held the claim was untimely, as a matter of law, because the plaintiff knew more than two years before filing it that the defendant had taken an adverse employment action against him. *Id.* Similarly, in *Rocheleau v. Elder Living Const. LLC*, No. 13-CV-14842, 2015 WL 1867331, at *2 (E.D. Mich. Apr. 23, 2015), *aff'd*, 814 F.3d 398 (6th Cir. 2016), the district court considered a plaintiff's claim that a prospective employer took an adverse action and failed to disclose "a summary of the nature and substance of the communication upon which [it] was based." It held that, where the prospective employer provided pre-adverse and adverse action notices more than two years before the plaintiff filed his complaint, the plaintiff's claim was not timely, *id.* at *3-4, and the Sixth Circuit affirmed, 814 F.3d 398, 400–01 (6th Cir. 2016). So too here. Mr. Merck admittedly knew more than two years before he filed his complaint (in June 2020) that Walmart had taken an adverse employment action against him (in June 2016). This is simply fatal to his claim; it is untimely as a matter of law and fact.

### D.  MR. MERCK CANNOT PROVE WILLFULNESS.

Finally, because Mr. Merck seeks only statutory damages pursuant to 15 U.S.C. § 1681n, for his case to proceed, he must prove a willful violation of the FCRA. *Id.* To defeat Walmart's motion, Mr. Merck must thus adduce evidence from which a reasonable fact-finder could conclude that: (a) Walmart knowingly violated the statute, or (b) it acted in reckless disregard of its obligations under the FCRA. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57-60 (2007). Knowing

violations are "a more serious subcategory of willful ones," and require proof of actual intent. *Id.* at 59. And with respect to recklessness, a company does not act in reckless disregard of its obligations under the FCRA "unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

Importantly, at the summary judgment state, Mr. Merck cannot rely on mere on allegations. He must "cit[e] to particular parts of materials in the record," Fed. R. Civ. P. 56(c), that prove Walmart either knowingly violated the FCRA or acted in reckless disregard of its FCRA obligations. In *McIntyre v. RentGrow, Inc.*, 34 F.4th 87, 96, 99 (1st Cir. 2022), the First Circuit affirmed summary judgment in a defendant's favor on willfulness grounds. In so ruling, it explained that, to survive summary judgment on a claimed willful violation, a plaintiff must show the defendant "acted in disregard of facts that would make it obvious, considering the totality of the circumstances, that there was an unjustifiably high risk that it was not complying with the statute." *Id.* at 96; *see also Berry v. Schulman*, 807 F.3d 600, 615 (4th Cir. 2015) (recognizing difficulty of proving willfulness in affirming approval of class action settlement of FCRA claim).

Mr. Merck cannot meet his burden. At all relevant times, Walmart had express policies in place to ensure *compliance* with the FCRA, including its pre-adverse action notice requirement.

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████ These facts, for which no counter-proof exists, entitle Walmart to summary judgment on willfulness. *See Smith v. LexisNexis Screening Sols., Inc.*, 837 F.3d 604, 610-11 (6th Cir. 2016) (holding district court erred in not entering judgment in defendant's favor on willfulness where record demonstrated consumer reporting agency's "efforts to combat inaccuracies"); *accord Hatten v. Experian Info. Sols., Inc.*, No. 12-12236, 2013 WL 5179190, at *8–9 (E.D. Mich. Sept. 12, 2013) (holding defendant entitled to summary judgment on willfulness where defendant had policies in place to ensure compliance with FCRA and team dedicated to investigating FCRA complaints).

In contrast to this evidence of good faith, the record is devoid of evidence from which a reasonable fact-finder could conclude Walmart knowingly violated the FCRA or acted in reckless disregard of it. This alone entitles Walmart to judgment in its favor. For example, in *Newlin v. Comcast Cable of Ind., Inc.*, No. 2:12-CV-430-TLS, 2015 WL 363426, at *4 (N.D. Ind. Jan. 27, 2015), the court entered judgment in the defendant's favor on a claim that it willfully violated the FCRA because "nothing presented at trial demonstrate[d] that the Defendant acted knowingly, intentionally, or recklessly in disregarding the protections of the FCRA." Similarly, in *Murray v. Indymac Bank, F.S.B.*, No. 04 C 7669, 2007 WL 2741650, at *3-10 (N.D. Ill. Sept. 13, 2007), the court entered judgment in the defendant's favor on the plaintiff's claim that it willfully violated the FCRA, explaining the plaintiff had an opportunity to collect evidence of the defendant's knowledge and intent during discovery but had nonetheless failed to point to any showing a willful violation. Likewise, here, despite ample opportunity, Mr. Merck cannot point to any record evidence showing Walmart knowingly violated the FCRA or acted with reckless disregard.

## IV.   CONCLUSION

For the foregoing reasons, the Court should dismiss this case for lack of standing or, alternatively, enter summary judgment in Walmart's favor.

Dated: June 29, 2022

/s/ John Richards
John Richards
Terminus 200 Building
3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Tel:    678.553.2100
richardsjr@gtlaw.com

Naomi G. Beer, *pro hac vice*
Greenberg Traurig, LLP
1144 15th Street, Suite 3300
Denver, Colorado 80202
Tel: 303.572.6549
beern@gtlaw.com

James N. Boudreau, *pro hac vice*
boudreauj@gtlaw.com
Christiana L. Signs, *pro hac vice*
signsc@gtlaw.com
Greenberg Traurig, LLP
1717 Arch Street, Suite 400
Philadelphia, PA 19103
Telephone: 215-988-7800

*Attorneys for Defendant Walmart Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 29, 2022, a copy of WALMART INC.'S MOTION AND SUPPORTING MEMORANDUM FOR SUMMARY JUDGMENT was filed electronically and served through the Court's Electronic Case Filing (ECF) system on the following counsel of record:

Michael J. Boyle, Jr.
Matthew R. Wilson
Meyer Wilson Co., LPA
1320 Dublin Road, Suite 100
Columbus, OH 43215
mboyle@meyerwilson.com
mwilson@meyerwilson.com

Beth E. Terrell
Erika L. Nusser
Terrell Marshall Daudt & Willie PLLC
936 North 34th Street, Suite 300
Seattle, WA 98103-8869
bterrell@tmdwlaw.com
enusser@terrellmarshall.com

Eleanor Michelle Drake
Joseph C. Hashmall
Berger & Montague
1229 Tyler Street NE, Ste. 205
Minneapolis, MN 55413
emdrake@bm.net
jhashmall@bm.net

*Attorneys for Plaintiff*

s/ *John Richards*
John Richards